IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

THOMAS A. ZWIEBEL,

                Plaintiff,          Case No. 3:11 CV 00236

-vs-

                                      MEMORANDUM OPINION

R.J. CORMAN RAILROAD
COMPANY/MATERIAL SALES,

                Defendant.

KATZ, J.

Plaintiff Thomas Zwiebel brings this action against his former employer, Defendant R.J. Corman Railroad Group, for breach of contract, promissory estoppel, disability discrimination, and violation of the Family Medical Leave Act ("FMLA"). The matter is currently before the Court on Defendant's motion for summary judgment as to all claims. For the reasons that follow, Defendant's motion is denied as to Plaintiff's disability discrimination claim, and granted as to all other claims.

**I. Background**

Defendant R.J. Corman Railroad Group is headquartered in Nicholasville, Kentucky, and operates a railroad materials distribution storage yard in Celina, Ohio. Plaintiff worked as a driver at Defendant's Celina yard from July 2002 through March 4, 2010, when he was permanently laid-off. At all times relevant, Plaintiff reported directly to two Celina supervisors, Tim Kaiser and Tom Altenbach, both of whom reported to John Mohr, the Operations Manager based in Nicholasville. Mohr reported to Mike Schmitt, who was also based in Nicholasville.

As a driver, Plaintiff picked up railroad materials from Defendant's Celina yard and drove them to railways in several different states. While at railway sites, Plaintiff operated a high axel

truck, which sits atop the rail line and unloads materials from the truck bed via a crane. Plaintiff's job was physical in nature, requiring him to load materials, conduct vehicle inspections, and climb into high axel trucks.

Plaintiff experienced problems with his right knee throughout employment, including a torn ligament, torn meniscus, and several arthrosporic surgeries. Plaintiff claims his knee caused him continued pain and made working difficult, though he continued working with minor accommodations by his immediate supervisors. In summer 2009, Plaintiff, in consultation with his doctor, began considering knee replacement surgery. As a result, Plaintiff approached Operations Manager John Mohr on October 9, 2009 to discuss the possibility of taking a "voluntary layoff" during the time of year Defendant usually lays-off employees. This way, Plaintiff could have knee surgery, have the necessary time to recover, and another employee could avoid being laid-off. Plaintiff claims he volunteered to take the layoff because he knew, given that Defendant conducted layoffs based on seniority, that he could otherwise avoid being let go. Plaintiff's conversation with Mohr was memorialized in a type-written summary that Mohr wrote for a file:

> Zwiebel asked "is there going to be a layoff this year?" I said "Possible . . . . [B]ut you are high enough seniority it wouldn't affect you." Zwiebel then said "I would like a voluntary layoff. I could stay home off my knee for six months while I was still drawing money." He didn't say as much but I assumed he was talking about drawing unemployment. I said "Normally an official layoff is by seniority, and I have never had anyone ask to be laid off. I will have to discuss this with Mike [Schmitt (Mohr's Superior),] and Human Resources to see what they think . . . . Tom then said I do not want to lose my job and if I have to, I will just keep working through the pain. . . .
>
> At parting, I said "I will discuss this with the powers that be and will be back in contact with you by Monday at the latest."

Pl's. Ex. 6(a), Doc. 16-2 at 23-24 (hereinafter, "Mohr's 10/9/09 Note").

2

Four days later, on October 13, Mohr telephoned Plaintiff. After having discussed the matter with "the powers that be," Mohr informed Plaintiff he was being laid-off immediately. The October 13 conversation was reflected in another type-written summary that Mohr wrote for the file:

> I started by saying; "Tom, the last time we met, you . . . volunteered to take the layoff in lieu of your seniority. You further told me . . . you had re-injured your knee as soon as you came back from your last surgery. I have discussed your special request with the powers that be and we are honoring your request". Tom said; "Well–I didn't want to do it right away". Stunned, I asked "what? I don't understand". Tom said "I wanted to get with the surgeon and find out when I could schedule the knee replacement. I plan to work for a while yet". I said, "No, you don't understand. I am accepting your request. There is no waiting. It is effective NOW". . . . You told me you were not up to 100%, and that you wanted time to rest and recuperate. I accept your request and you are off effective with this phone call. You can file for unemployment and it will not be contested. Once you feel you are back to 100%, you will get in writing <u>Return to work with no restrictions</u> and we will go from there.

Plf's. Ex. 6(b), Doc. 16-2 at 25-26 (emphasis in the original) (hereinafter, "Mohr's 10/13/09 Note"). During deposition, Plaintiff further described his 10/13/09 conversation when Mohr informed him of the lay-off:

> I said John, that's not what I asked you. I said could it be possible to take a layoff?
> He said you asked for it, you got it. You're done as of today. You're laid off.
> I said I don't even have a surgeon. I don't even have an appointment with a doctor. . . .
> [He said] I'm sorry, that's just the way it's going to be. He said you want it, you got it.
> 
> * * *
>
> [W]hen [Mohr] did say that I [was laid-off] I said when I come back I'm going to have my job, right? And he said yes, you will have your job.
> I said my seniority and my pay?
> Yes, there's nothing going to take care–nothing going to happen to that. 100 percent when your doctor releases you you'll have your job.
> I said you're giving me your word, and he said yes, I'm giving you my word.

Pl's. Dep., Doc. 14-2 at 96:14-97:1; 97:14-24 (hereinafter, Pl's Dep.).

3

Plaintiff had knee replacement surgery in December 2009. Plaintiff claims he told Defendant that he expected to be released by his doctor for work at a March 9, 2010 appointment, though Defendant claims that Plaintiff never informed Defendant when he would be able to return to work. In any event, Defendant permanently terminated Plaintiff via a certified letter dated March 4, 2010. The reason for termination as stated in the letter was Plaintiff's failure to specify a date on which he would be available to work.

Plaintiff subsequently instituted this action in the Ohio Court of Common Pleas for Mercer County on December 29, 2010, asserting claims for breach of contract, promissory estoppel, disability discrimination, and FMLA violations. Defendant removed the case to this Court and now seeks summary judgment on all claims.

**II. Summary Judgment Standard**

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). The moving party bears the initial responsibility of "informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 2553, 91 L. Ed. 2d 265 (1986). The movant may meet this burden by demonstrating the absence of evidence supporting one or more essential elements of the non-movant's claim. *Id.* at 323-25. Once the movant meets this burden, the opposing party "must set forth specific facts showing that there is a genuine issue for trial."

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S. Ct. 2505, 2541, 91 L. Ed. 2d 202 (1986) (*quoting* FED. R. CIV. P. 56(e)).

Once the burden of production has so shifted, the party opposing summary judgment cannot rest on its pleadings or merely reassert its previous allegations. It is not sufficient "simply [to] show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d 538 (1986). Rather, Rule 56(e) "requires the nonmoving party to go beyond the pleadings" and present some type of evidentiary material in support of its position. *Celotex*, 477 U.S. at 324, 106 S. Ct. at 2553; *see also Harris v. General Motors Corp.*, 201 F.3d 800, 802 (6th Cir. 2000). Summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322, 106 S. Ct. at 2552.

"In considering a motion for summary judgment, the Court must view the facts and draw all reasonable inferences therefrom in a light most favorable to the nonmoving party." *Williams v. Belknap*, 154 F. Supp. 2d 1069, 1071 (E.D. Mich. 2001) (citing *60 Ivy Street Corp. v. Alexander*, 822 F.2d 1432, 1435 (6th Cir. 1987)). However, "'at the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter,'" *Wiley v. U.S.*, 20 F.3d 222, 227 (6th Cir. 1994) (quoting *Anderson*, 477 U.S. at 249); therefore, "[t]he Court is not required or permitted . . . to judge the evidence or make findings of fact." *Williams*, 154 F. Supp. 2d at 1071. The purpose of summary judgment "is not to resolve factual issues, but to determine if there are genuine issues of fact to be tried." *Abercrombie & Fitch Stores, Inc. v. Am. Eagle Outfitters, Inc.*, 130 F. Supp. 2d 928, 930 (S.D. Ohio 1999). Ultimately, this Court must determine "whether the evidence presents a sufficient disagreement to require

submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251-52; *see also Atchley v. RK Co.*, 224 F.3d 537, 539 (6th Cir. 2000).

### III. Discussion

### A. FMLA Claim

Plaintiff expressly abandons his FMLA claim, conceding that Defendant does not employ enough people at or near its Celina facility to be subject to the Act. Def's Opp., Doc. 16 at 2 n.1 (hereinafter, "Def's. Opp."). Accordingly, Defendant's motion for summary judgment is granted as to Plaintiff's FMLA claim.

### B. Breach of Contract

Employment in Ohio is generally at-will, and at-will employees may be terminated for any reason, or for no reason whatsoever. *Mers v. Dispatch Printing Co.*, 483 N.E.2d 150, 153 (Ohio 1985). There are, however, two exceptions to at-will employment: implied contract and promissory estoppel. *Tersigni v. Gen. Tire, Inc.*, 633 N.E.2d 1140, 1141 (Ohio Ct. App. 1993) (citing *Mers*, *supra*). When determining whether an implied contract exists, courts should examine "the 'facts and circumstances' surrounding an at-will agreement . . . to ascertain if they indicate what took place, the parties' intent, and the existence of implied or express contractual provisions which may alter the terms for discharge." *Mers*, 483 N.E.2d at 154 (quoting *Henkel v. Educ. Research Council*, 344 N.E.2d 118 (Ohio 1976)); *see also Tersigni*, 633 N.E.2d at 1141-42 ("[T]he cumulative effect of various events may transform an employment-at-will agreement into an implied contract."). Importantly, in order to create an implied contract, "the parties must have a distinct and common intention which is communicated by each party to the other party." *Root v. PCC Airfoils*, Nos. 73149, 73150, 73151, 73402, 73403, 73404, 1998 Ohio App. LEXIS 4652, at

6

*27 (Ohio Ct. App. Oct. 1, 1998) (quoting *Cohen & Co. v. Messina*, 492 N.E.2d 867 (Ohio Ct. App. 1985)), and there must be sufficient specificity in the terms of the agreement. *Handler v. Merrill Lynch Life Agency, Inc.*, 635 N.E.2d 1271, 1275 (Ohio Ct. App. 1993).

In the instant matter, Plaintiff claims his at-will status was altered by an agreement made between himself and Defendant during his October 9 and October 13 conversations with Mohr.

At the outset, the Court notes Defendant's objection to Plaintiff's inclusion of Mohr's 10/9/09 Note and Mohr's 10/13/09 Note. Defendant argues they are unauthenticated hearsay documents. *See* Pl's. Reply, Doc. 17 at 4 (hereinafter, "Pl's. Reply") (objecting to exhibits three through eight).[1] Defendant's objection is not well-taken. The documents are not hearsay under FED. R. EVID. 801(d)(2)(D)'s provision for admissibility of party admissions. Mohr is an agent of Defendant and the statements in his notes were made within the scope of his employment. *See Grizzell v. City of Columbus Div. Of Police*, 461 F.3d 711, 722 (6th Cir. 2006) (Rule 801(d)(2)(D) "designed to bind the employer where one of its managerial employees makes a statement within the scope of the employee's duties as . . . a manager."); *see also Hill v. Speigel, Inc*., 708 F.2d 233, 237 (6th Cir. 1983) ("not necessary to show that the declarant had authority to make the statement . . . . [It is only necessary that] the content of the declarant's statement concerned a matter within the scope of his agency."). As to authentication, there is sufficient circumstantial evidence to authenticate Mohr's notes under FED. R. EVID. 901. *See Churches of Christ in Christian Union v. Evangelical Benefit Trust*, No. C2-07-CV-1186, 2009 U.S. Dist. LEXIS 63058, at *15-*16 (6th Cir. July 15, 2009) (quoting *Denison v. Swaco Geolograph Co.*, 941 F.2d 1416, 1423 (10th Cir. 1991))

---

[1] Regarding the other exhibits to which Defendant objects–a performance evaluation, medical reports, and emails–these are not exhibits on which the Court relies for purposes of this Opinion, and the Court therefore withholds ruling.

("[w]here a document is produced in discovery, 'there [is] sufficient circumstantial evidence to support its authenticity at trial.'"); *see also Worthy v. Mich. Bell Tel. Co.*, No. 10-2441, 2012 U.S. App. LEXIS 6034, at *5-*6 (6th Cir. Mar. 21, 2012) (discussing *Churches of Christ*'s authentication ruling).

Turning to an analysis of the purported agreement, Defendant argues that regardless of any discussion between Plaintiff and Mohr, Defendant's Employee Handbook contains a disclaimer that precludes the parties from entering the alleged agreement. The disclaimer states: "Neither this handbook nor any other communications by a management representative are intended to, in any way, create a contract of permanent employment." Def's. Mot., Doc. 14 at 9 (hereinafter, "Def's. Mot.").[2]

It is true that handbook disclaimers can preclude formation of an employment contract. *See*, *e.g.*, *Handler*, 635 N.E.2d at 1275 (contract precluded by disclaimer). Nevertheless, an employer's oral assurances can create employment contracts in spite of such disclaimers. *Id*. at 1275; *see also Tersigni*, 633 N.E.2d at 1142 (evidence of detailed, long-standing oral policy negated written disclaimer); *Root*, 1998 Ohio App. LEXIS 4652, at *25 (explaining that a supervisor's oral representations can negate disclaimer in some circumstances). In such cases, there must be sufficient specificity in the terms of the agreement and in the intent of the parties to negate a disclaimer. *Handler*, 635 N.E.2d at 1275.

Plaintiff relies on *Tersigni v. Gen. Tire*, *Inc*., *supra*, for the proposition that Defendant's seniority-based layoff policy negates the Handbook disclaimer. In *Tersigni*, defendant company

---

[2] While the disclaimer was used as an exhibit during Plaintiff's deposition, the disclaimer was not actually filed on the record. The Court takes the agreement's quoted language from Defendant's summary judgment motion. Def's. Mot. at 9.

had a long-standing policy that allowed employees subject to a layoff to "bump" less senior employees. The company eventually eliminated the policy, added a disclaimer regarding at-will employment, and laid-off approximately 100 people. *Id*. at 1142, 43. On appeal, the court found that the bumping policy created an implied contract such that an employee could not be laid-off without being allowed to bump a less senior employee. *Id*. While *Tersigni* does demonstrate that oral representations can overcome a disclaimer, the case is not directly analogous to the facts *sub judice*, and does not support Plaintiff's proposition. Specifically, the bumping policy in *Tersigni* itself provided the specific terms of an implied employment agreement; namely, that workers could not be laid off absent a chance to bump less-senior employees. Conversely, nothing in the terms of Defendant's seniority-based layoff policy suggests that an employee will be brought back from a voluntary layoff.

Notwithstanding the differences between *Tersigni* and the instant matter, "all the facts and circumstances" demonstrate a factual dispute on the issue of specificity. According to Mohr's account of the October 13 conversation, Mohr told Plaintiff that once he was back to 100% and was released by his doctor, "we will go from there." Mohr's 10/13/09 Note. While such a statement is somewhat indefinite, Plaintiff's account of the conversation suggests that Mohr was more specific. Plaintiff claims Mohr said: "100 percent when your doctor releases you you'll have your job." Pl's. Dep. at 97:21-22. The Court believes such a statement provides sufficient specificity to overcome Defendant's disclaimer and provide for the existence of an agreement. *See Harris v. J.B. Robinson Jewelers*, 627 F.3d 235, 239 (6th Cir. 2010) (citing *Churchwell v. Bluegrass Marine, Inc.*, 444 F.3d 898, 904 (6th Cir. 2006)) (Plaintiff's own testimony enough to create genuine issue of material fact).

9

Yet, Plaintiff's breach of contract claim still fails because he cannot show that Defendant offered a specific duration of employment. As explained by the Ohio Court of Appeals in *Miller v. Lindsay-Green, Inc*., No. 04AP-848, 2005 Ohio App. LEXIS 5696 (Ohio Ct. App. Dec. 1, 2005), "a court must presume a contract without a durational term is terminable at will, 'unless the terms of the contract or other circumstances clearly manifest the parties' intent to bind each other' to a specific term." *Id*. at \*\*28 (quoting *Henkel*, 344 N.E.2d at 255). In this case, nothing indicates that a duration of employment was contemplated. Indeed, Plaintiff's opposition brief rejected the notion that Defendant promised a specific duration of employment. *See* Opp. at 16 ("[Plaintiff] is not arguing that a contract of permanent employment was created . . . . [T]he contract was that he would be brought back from the knee surgery and the knee surgery would not be a reason for termination."). In effect, even if Defendant promised Plaintiff a job, it promised him an at-will job. The situation is analogous to instances in which employers provide incoming employees with an offer letter. Even though the letter may promise a start date, salary, bonus, moving expenses, and specify contingencies under which the employee must repay expenses for quitting before a date-certain, the promise is for an at-will position, unless the offer specifies a duration of employment. *See Clark v. Collins Bus Corp.*, 736 N.E.2d 970, 972-73 (Ohio Ct. App. 2000) (no breach of contract where defendant terminated plaintiff prior to start date, even though offer letter specified start date, salary, bonus, reimbursements, and contingencies for reimbursements). Defendant's motion for summary judgment is therefore granted as to Plaintiff's breach of contract claim.

**C. Promissory Estoppel**

Ohio recognizes a promissory estoppel exception from the general rule that employment is at-will. *Mers*, 483 N.E.2d at 154. To establish a promissory estoppel claim, Plaintiff must prove that "(1) the defendant made a clear, unambiguous promise; (2) the defendant should have

10

reasonably expected the promise to induce action or forbearance on the part of the plaintiff; (3) the promise actually induced action or forbearance that was detrimental to the plaintiff; and (4) enforcement of the promise is necessary to avoid injustice." *Woodworth v. Concord Mgmt. Ltd.*, 164 F. Supp. 2d 978, 987 (S.D. Ohio 2000).

Plaintiff's promissory estoppel claim cannot survive summary judgment. The Ohio Supreme Court has explained that "[i]n the absence of a 'specific promise of continued employment,' a promise of future benefits or opportunities does not support a promissory estoppel exception to the employment-at-will doctrine." *Clark*, 736 N.E.2d at 974 (quoting *Wing v. Anchor Media, Ltd. of Tex.*, 570 N.E.2d 1095, 1096, at paragraph 2 of syllabus (Ohio 1991) (abrogated on other grounds)). As discussed in the Court's analysis of Plaintiff's claim for breach of contract, *supra*, nothing indicates that Defendant promised continued employment, and Defendant's summary judgment motion is therefore granted as to Plaintiff's promissory estoppel claim. *See Clark*, 736 N.E.2d at 973-74 (no promissory estoppel claim where employment letter specified start date, salary, bonus, reimbursements, and contingencies for reimbursements, but did not promise continued employment); *Stull v. Combustion Eng'g, Inc.*, 595 N.E.2d 504, 507 (Ohio Ct. App. 1991) (no promissory estoppel claim where employee handbook distinguished between "long-term regular" and "temporary" employees, or where handbook stated long-term employees given special consideration during layoffs; but supervisor's specific promise–in addition to handbook statements–that employee would be around either until retirement or until plant closed sufficient for promissory estoppel).

### D. Disability Discrimination

OHIO REV. CODE § 4112.02(A) makes it an unlawful discriminatory practice "[f]or any employer, because of . . . disability . . . to discharge without just cause, to refuse to hire, or

11

otherwise to discriminate against that person with respect to hire, tenure, terms, conditions, or privileges of employment, or any matter directly or indirectly related to employment."). Plaintiff claims Defendant violated Section 4112.02(A) by terminating him because of his knee condition. Conversely, Defendant claims it terminated Plaintiff for failing to communicate a date on which he could return to work.

The Court may look to federal Americans with Disabilities Act ("ADA") regulations and case law when interpreting OHIO REV. CODE § 4112.02(A). *Brenneman v. MedCentral Health Sys.*, 366 F.3d 413, 418 (6th Cir. 2004); *Columbus Civil Service Comm'n v. McGlone*, 697 N.E.2d 204, 206-07 ( Ohio 1998). As such, the Court applies the familiar *McDonnell-Douglas* burden shifting analysis. *Monette v. Elec. Data Sys. Corp.*, 90 F.3d 1173, 1178 (6th Cir. 1996). Under that framework, Plaintiff has the initial burden of establishing a *prima facie* case of disability discrimination by showing that (1) he is disabled; (2) he is otherwise qualified for the job, with or without reasonable accommodation; (3) he suffered an adverse employment decision; (4) the employer knew or had reason to know of his disability; and (5) after his termination, the position remained open, or the disabled employee was replaced. *Monette*, 90 F.3d at 1186; *see also Whitfield v. Tenn.*, 639 F.3d 253, 259 (6th Cir. 2011) (clarifying that *Monette* states proper formulation of *prima facie* case); *but see Lewis v. Humboldt Acquisition Corp.*, 681 F.3d 312, 314-15 (6th Cir. 2012) (removing requirement that disability must be *sole* reason for adverse employment action). In this case, Defendant moves for summary judgment on grounds that Plaintiff cannot establish that his knee condition is within the statutory definition of a disability,

and therefore cannot establish prong one of the *prima facie* case. Defendant also contends that Plaintiff cannot rebut Defendant's legitimate non-discriminatory reason for terminating him.[3]

To demonstrate that Plaintiff's knee condition makes him disabled under the statute he must show that it "substantially limits one or more major life activities." *Neumann v. Plastipak Packaging, Inc.*, No. 1:11-CV-522, 2011 U.S. Dist. LEXIS 126096, at *23 (N.D. Ohio Oct. 31, 2011). In this case, the Court agrees with Defendant that Plaintiff has not met this burden. As Defendant points out, Plaintiff's complaint does not specify the major life activity in which he is limited, though Plaintiff did state at deposition that he cannot run or jump, and cannot kneel on the knee that was replaced. Defendant, however, cites several cases holding that running and jumping are not major life activities. *See Rutherford v. Wackenhut Corp.*, No. 04-C-1216, 2006 U.S. Dist. LEXIS 26347, at *12-*13 (D. Wis. April 25, 2006) ("running, jumping, skipping, dancing chasing the grandchildren . . . are not 'major life activities' . . . ."); *Ruggles v. Keebler Co.*, 224 F. Supp. 2d 1295, 1301 (D. Kan. 2002) (running and crawling on floor with grandchildren not major life activities); *Piascyk v. City of New Haven*, 64 F. Supp. 2d 19, 26 (D. Conn. 1999) (running, jumping, climbing stairs and ladders, and crawling not major life activities). Plaintiff does not offer any case law to the contrary. Moreover, the Court agrees with Defendant that Plaintiff cannot establish a disability even under the more liberalized definition of disability created by the Americans with Disabilities Amendments Act of 2008 ("ADAAA"), Pub. L. No. 110-325, which

---

[3] Defendant's briefs also assert that Plaintiff cannot satisfy a failure to accommodate claim because he did not specifically request an accommodation. *See* Def's. Mot. at 19; Def's. Reply at 14-15. The context in which Defendant attacks the accommodation issue is not clear from the briefs. In any event, there is a sufficient factual dispute to defeat summary judgment given that Defendant discussed previous accommodations with Mohr. *See* Mohr's 10/9/09 Note.

includes "bending" as a major life activity. Plaintiff offers neither case law, nor argument, to demonstrate that kneeling on one knee is encompassed by the ADAAA's definition of "bending."[4] Thus, Plaintiff has failed to show that his knee condition constitutes a disability within the meaning of the statute.

Despite failing to demonstrate that his knee condition substantially limits a major life activity, the Court finds Plaintiff still satisfies the statutory definition of disability by creating a factual dispute as to whether Defendant regarded Plaintiff as disabled. *See Neumann*, 2011 U.S. Dist. LEXIS 126096, at *31 (Plaintiff regarded as disabled where "defendant mistakenly believes that an actual, nonlimiting impairment substantially limits one or more major life activities."). Mohr stated in his 10/9/09 Note that: "I then said "Tom, you need to be at 100%. It isn't fair to the other guys and if you can't do all the job functions, you need to see your doctor." Moreover, Mohr's 10/13/09 Note stated:

> "I am not happy that [Tim] favored Tom by not making him perform certain job functions because of his knee. I feel Tim knew Tom was not up to 100% and maybe even was aware he re-injured himself. His actions are not in keeping with good management practices! I want you (Tom) to re-emphasize that to him". [sic].

A reasonable jury could conclude from such evidence that Defendant regarded Plaintiff as disabled.

Defendant correctly points out that the ADA expressly excepts transitory (six months or less) impairments from "regarded as" claims. *See Neumann*, 2011 U.S. Dist. LEXIS 126096, at *30-*31 (citing 42 U.S.C. § 12102(3)(B)) (transitory impairments not encompassed by "regarded

---

[4] Defendant contends that Ohio courts have not specified that Ohio's disability discrimination statute encompasses the regulations and jurisprudence created by the ADAAA. Plaintiff does not respond. The Court does not express an opinion on this issue.

as" claims). Defendant therefore argues that Plaintiff does not have a viable "regarded as" claim because Plaintiff previously stated his recovery would likely last only three months. Yet, given Mohr's statements, and given Defendant's assertion–discussed *infra*–that Plaintiff's termination was justified because he could not communicate when he would return to work, a jury could find that Defendant believed Plaintiff's impairment was not transitory. *Cf. Neumann*, 2011 U.S. Dist. LEXIS 126096, at *30 ("Neumann has not offered any evidence to indicate that the actual or expected duration of his surgery recuperation was greater than sixth months, or that the Defendants so believed."). Plaintiff is therefore able to satisfy those elements of the *prima facie* case on which Defendant moves for summary judgment.

Shifting, then, to whether Defendant can articulate a legitimate, non-discriminatory reason for Plaintiff's termination, the Court finds Defendant has carried its burden. Specifically, Defendant asserts that Plaintiff repeatedly failed to inform Defendant when he would be able to return to work. Plaintiff strenuously objects to this assertion, but Defendant has sufficiently created a factual dispute to carry its burden on summary judgment.

Finally, Plaintiff must demonstrate that Defendant's non-discriminatory reason for termination was pretext. The Court finds Plaintiff has satisfied this burden by pointing to Mohr's 10/9/09 and 10/13/09 Notes:

> Tom then said "I do not want to lose my job and if I have to, I will just keep working through the pain. Tim (Kaiser) has let me avoid certain functions and has had the other guys do the maintenance and stuff." I then said "Tom, you need to be at 100%. It isn't fair to the other guys and if you can't do all the job functions, you need to see your doctor."

Mohr's 10/9/09 Note.

> I phone [sic] Tim back after enough time as to assure Tom had left. I asked Tim; "Do you understand what happen"? [sic] Tim said "No, not exactly". I then gave Tim a Reader's Digest version of the earlier discussion I have [sic] with Tom where

15

> he had asked for a voluntary lay-off. I then told Tim specifically; "Tim, Tom is NOT to return to work in any capacity. He is off - <u>PERIOD</u>. He needs to take care of his knee and will need to be at 100% before he comes back *however long that takes*. Do you understand"? Tim said "Yes"[.]
>
> Immediately after Tim and I hung up, I phone [sic] Tom Altenbach and related the entire event. I said; "Tom, please phone Tim and make sure he understands two things. . . . 2.) I am not happy that he favored Tom by not making him perform certain job functions because of his knee. I feel Tim knew Tom was not up to 100% and maybe even was aware he re-injured himself. His actions are not in keeping with good management practices! I want you (Tom) to re-emphasize that to him".

Mohr's 10/13/09 Note (emphasis in the original).

In summary, Plaintiff has created sufficient factual disputes as to whether Defendant regarded him as disabled, and as to whether Defendant's reason for terminating him was pretext. Accordingly, Defendant's motion for summary judgment is denied with respect to Plaintiff's disability discrimination claim.

**IV. Conclusion**

For the reasons stated herein, Defendant's motion for summary judgment is granted in part and denied in part. Doc. 14. Defendant's motion is granted with respect to Plaintiff's claims for violation of the FMLA, for breach of contract, and for promissory estoppel. Defendant's motion is denied with respect to Plaintiff's disability discrimination claim.

IT IS SO ORDERED.

                                                   s/ *David A. Katz*
                                                   DAVID A. KATZ
                                                   U. S. DISTRICT JUDGE